Ryan G. Baker (Bar No. 214036)
  rbaker@waymakerlaw.com
Jaime W. Marquart (Bar No. 200344)
  jmarquart@waymakerlaw.com
Teresa L. Huggins (Bar No. 263257)
  thuggins@waymakerlaw.com
Sam S. Meehan (Bar No. 307934)
  smeehan@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

*Attorneys for Plaintiff Tony Bobulinski*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Tony Bobulinski, an individual,<br><br>       Plaintiff,<br><br>       v.<br><br>Hugh Dickson, an individual; Hickory Grove, LLC, a limited liability company, Jake Fisch, an individual; Don Williams, an individual; Grant Thornton Specialist Services Ltd., a corporation; Robert Roche, an individual; Theresa Roche, an individual; Phillip Tyrrell, an individual; Sheppard Mullin Richter & Hampton LLP, a limited liability partnership; Walkers LLP, a limited liability partnership; MGG Investment Group, LP, a limited partnership, and DOES 1 through 20,<br><br>       Defendants. | Case No. 2:24-cv-02600-MWF-JPR<br><br>**PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S MOTION TO DISMISS**<br><br>Hearing Date: January 13, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5A |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................... 2

III. LEGAL STANDARD ................................................................................. 3

IV.  ARGUMENT ............................................................................................. 4

  A.   Walkers Is Subject to Personal Jurisdiction ............................................ 4

    1.   The Court Has Specific Jurisdiction Over Walkers .................... 4

      (a)   The FAC Demonstrates Walkers' Purposeful
            Availment ................................................................................ 4

    2.   Bobulinski's Claims Relate To or Arise Out of Walkers'
         Contacts with the Forum ............................................................ 7

    3.   Exercising Jurisdiction Over Walkers Is Reasonable ................ 7

  B.   ALL CLAIMS ARE SUFFICIENTLY PLED ........................................ 9

    1.   Plaintiff's RICO Claims Are Sufficiently Pled (Claims
         One and Two) .............................................................................. 9

      (a)   Bobulinski Has Alleged a Closed-Ended Pattern of
            Racketeering Activity Extending over Several Years ........ 9

      (b)   Bobulinski Has Pled that Walkers Participated in the
            RICO Enterprise ................................................................. 11

      (c)   Bobulinski Has Pled Conspiracy to Violate RICO .......... 11

    2.   Bobulinski States a Claim for Fraud (Third Claim) .................. 11

      (a)   The Litigation Privilege Does Not Apply ....................... 13

    3.   Bobulinski States a Claim for Conspiracy to Commit
         Fraud (Fourth Claim) ................................................................ 14

    4.   Bobulinski States a Claim for Aiding and Abetting (Sixth
         and Eighth Claims) ................................................................... 15

  C.   ALL CLAIMS ARE TIMELY ................................................................ 17

    1.   The RICO Claims Are Timely .................................................. 17

    2.   Bobulinski's Fraud Claims Are Timely ................................... 17

    3.   The Aiding and Abetting Claims Are Not Time-Barred .......... 19

(a)    The Statute of Repose Does Not Bar the Fraudulent
Transfer Claims ................................................................. 19

(b)    Section 340.6 Does Not Apply ......................................... 20

V.    LEAVE TO AMEND SHOULD BE GRANTED ......................................... 21

VI.    THE COURT SHOULD EXERCISE SUPPLEMENTAL
JURISDICTION .............................................................................. 22

VII.    CONCLUSION .................................................................................... 22

WAYMAKER

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abselet v. Levene Neale Bender Yoo and Brill L.L.P.*,
    Case No. CV 16-6263-JFW (JEMx), 2017 WL 10403275 (C.D. Cal.
    Aug. 10, 2017) .................................................................................................21

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ........................................................................9, 10

*Asahi Metal Industry Co., Ltd. v. Superior Court of California,
    Solano County*,
    480 U.S. 102 (1987) .............................................................................................8

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
    11 F.4th 972 (9th Cir. 2021).............................................................................8, 9

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ...............................................................................7

*Batiste v. Island Records Inc.*,
    179 F.3d 217 (5th Cir. 1999).............................................................................22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................3

*Bradshaw v. SLM Corp.*,
    652 F. App'x 593 (9th Cir. 2016).......................................................................15

*Brainerd v. Governors of the University of Alberta*,
    873 F.2d 1257 (9th Cir. 1989) ..............................................................................6

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ..................................................................................3

*Cadles of West Virginia, LLC v. Alvarez*,
    No. 20-CV-2534, 2023 WL 4280786 (S.D. Cal. June 29, 2023).......................20

*California Software Inc. v. Reliability Research*,
    631 F. Supp. 1356 (C.D. Cal. 1986)....................................................................5

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................... 6

*Cosmos Forms Ltd. v. Guardian Life Insurance Co. of America*,
   113 F.3d 308 (2d Cir. 1997) ............................................................ 11

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013)............................................. 15

*Doe v. Unocal Corp.*,
   27 F. Supp. 2d 1174 (C.D. Cal. 1998)............................................... 9

*Doe v. WebGroup Czech Republic, a.s.*,
   93 F.4th 442 (9th Cir. 2024)............................................................... 8

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
   153 Cal. App. 4th 1308 (2007).......................................................... 18

*EDIAS Software International, L.L.C. v. BASIS Intetnational, Ltd.*,
   947 F. Supp. 413 (D. Ariz. 1996)....................................................... 5

*Enfield v. Hunt*,
   91 Cal. App. 3d 417 (1979) ............................................................... 19

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .......................................................... 14

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*,
   905 F.3d 597 (9th Cir. 2018) ........................................................ 4, 8

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ....................................................................... 18

*Fujifilm Corp. v. Yang*,
   223 Cal. App. 4th 326 (2014). .......................................................... 20

*Gilmore Bank v. AsiaTrust New Zealand Ltd.*,
   223 Cal. App. 4th 1558 (2014)............................................................ 7

*Gonzalez v. Lloyds TSB Bank, PLC*,
   532 F. Supp. 2d 1200 (C.D. Cal. 2006)............................................. 11

*Gunnoe v. Reassure Am. Life Ins. Co.*,
   No. EDCV 13-00613, 2013 WL 12131169 (C.D. Cal. Nov. 1, 2013)............... 13

iv

*Gutierrez v. Givens*,
    989 F. Supp. 1033 (S.D. Cal. 1997) .................................................................... 11

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989) ........................................................................................... 9

*Hall v. LaRonde*,
    56 Cal. App. 4th 1342 (1997) ............................................................................ 5

*Hoffman v. 162 North Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014) .................................................................... 11, 12

*Husky International Electronics, Inc. v. Ritz*,
    578 U.S. 355 (2016) ......................................................................................... 20

*Integral Development Corp. v. Weissenbach*,
    99 Cal. App. 4th 576 (2002) .............................................................................. 8

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ........................................................................................... 7

*Kernan v. Regents of University of California*,
    83 Cal. App. 5th 675 (2022) ............................................................................ 19

*Kimmel v. Goland*,
    51 Cal.3d 202 (1990) ....................................................................................... 14

*Lee v. Hanley*,
    61 Cal.4th 1225 (2015) .................................................................................... 21

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ........................................................................... 3

*Morrill v. Scott Financial Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ........................................................................... 4

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................. 3

*Nazemi v. Specialized Loan Servicing, LLC*,
    637 F. Supp. 3d 856 (C.D. Cal. 2022) ............................................................. 21

*Neilson v. Union Bank of Cal., North America*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................... 16

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Parsons v. Tickner,*
    31 Cal. App. 4th 1513 (1995) ............................................................................ 18

*Pavicich v. Santucci,*
    85 Cal. App. 4th 382 (2000) .............................................................................. 12

*PGA West Residential Association v. Hulven International, Inc.,*
    14 Cal. App. 5th 156 (2017) .............................................................................. 20

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
    223 Cal. App. 4th 1105 (2014) .......................................................................... 20

*Quintilliani v. Mannerino,*
    62 Cal. App. 4th 54 (1998) ................................................................................ 21

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607 (1992) ............................................................................................ 6

*Retail Property Trust v. United Brotherhood of Carpenters & Joiners of America,*
    768 F.3d 938 (9th Cir. 2014) ............................................................................. 10

*Rickley v. Goodfriend,*
    212 Cal. App. 4th 1136 (2013) .......................................................................... 15

*Schneider v. Hardesty,*
    669 F.3d 693 (6th Cir. 2012) ............................................................................ 6-7

*Stueve Brothers Farms, LLC v. Berger Kahn,*
    222 Cal. App. 4th 303 (2013) ............................................................................ 20

*Sun Savings and Loan Associasion v. Dierdorff,*
    825 F.2d 187 (9th Cir. 1987) ............................................................................. 10

*Tait v. BSH Home Appliances Corp.,*
    No. SACV 10-00711, 2011 WL 3941387 ......................................................... 13

*Tercica, Inc. v. Insmed Inc.,*
    No. C 05-5027, 2006 WL 1626930 (N.D. Cal. June 9, 2006) ............................. 4

*Tivoli LLC v. Sankey,*
    No. SA CV 14-1285, 2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) ................. 16

*United States v. Fernandez,*
    388 F.3d 1199 (9th Cir. 2004) ........................................................................... 11

vi

*Vega v. Jones, Day, Reavis & Pogue*,
    121 Cal. App. 4th 282 (2004) ......................................................... 12, 13

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................ 4

*Wimbledon Financial Master Fund Ltd. v. Binert Miller &
    Katzman, PLC*,
    619 F. Supp. 3d 351 (S.D.N.Y. 2022) ................................................ 14

*Yagman v. Kelly*,
    No. CV 17-6022, 018 WL 2138461, (C.D. Cal. March 20, 2018) .................... 10

*Yahoo! Inc. v. La Ligue*,
    433 F.3d 1199 (9th Cir. 2006) ......................................................... 4, 7

**Statutes**

Cal. Civ. Code § 3439(a)(1) ..................................................................... 21

Cal. Civ. Code § 3439.04(a)(2) ............................................................... 21

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................ 3

# I.  INTRODUCTION

Defendant Walkers (Cayman), LLP ("Walkers" or "Defendant"), in concert with its co-conspirators, participated in a years-long scheme that manipulated two California companies, sending one into liquidation and using the other to conceal assets that should have been used to satisfy obligations to Plaintiff Tony Bobulinski ("Plaintiff" or "Bobulinski"). Walkers did so with the explicit intent to defraud Bobulinski of the value of his investments. Walkers now seeks to avoid liability by evading personal jurisdiction, but its arguments are specious.

Walkers engaged in suit-related activity directed at the forum so as to be subject to jurisdiction: it used two California companies to effect the fraudulent transfers alleged in the first amended complaint ("FAC"). Specifically, Walkers helped develop a "work around" to Bobulinski's refusal to subordinate his creditor rights. Using documents governed by California law, Walkers worked with the other defendants to transfer all shares in a California limited liability company, RAAD Productions, LLC ("RAAD"), to a California-based company, China Branding Group Ltd. ("CBG"), turning RAAD into a subsidiary of CBG to allow for the fraudulent transfers that injured Bobulinski, then a California resident. Bobulinski's loan to CBG was secured by CBG's assets, including assets in California, and the agreements Bobulinski entered into with CBG stated his signature was needed before any assets could be transferred out of CBG. Walkers knew these facts and facilitated the fraudulent transfers among California companies to evade Plaintiff's creditor rights anyway to make sure the deal selling those assets closed. It is subject to jurisdiction here.

Plaintiff's claims are also timely. The statute of repose runs from the date the transfer was "perfected," not the date the relevant contracts were executed. Bobulinski did not discover Walkers' wrongdoing until deposing CBG's CEO in April 2021, making all other claims timely. In any event, the disputed timing of the discovery of Plaintiff's injury is a fact question unsuitable for resolution on a motion

1

1   to dismiss.

2       Bobulinski's claims for fraud, conspiracy and fraudulent transfer are properly

3   pled. Bobulinski has alleged Walkers' participation in a years-long pattern of RICO

4   activity sufficient to state a claim under that statute.

5       Bobulinski requests that the Court deny the Motion to Dismiss. In the

6   alternative, he requests leave to amend.

7   **II.    STATEMENT OF FACTS**

8       The following facts relating to the CBG transaction have been thoroughly

9   briefed in other oppositions to be analyzed and heard concurrently with this

10  Opposition and are truncated here for the Court's convenience. CBG was a Cayman

11  Islands corporation based in California. Bobulinski loaned money to CBG pursuant

12  to a Note and Pledge Agreement ("Pledge"), which stated that CBG could "not sell,

13  offer to sell, dispose of, convey, assign, or otherwise transfer . . . any of the

14  Collateral," as defined in the Pledge, without Bobulinski's "prior written consent."

15  (FAC ¶ 53.) All defendants in this matter are accused of fraudulently transferring

16  CBG's most valuable assets ("Collateral" under the Pledge) to a California

17  "affiliate" of CBG, RAAD Productions, LLC, on the eve of the sale of CBG's

18  interest in RAAD to Remark Media, Inc. (*Id.* ¶¶ ¶¶ 43, 47-48, 52-58, 69.) This had

19  the effect of robbing Bobulinski of his rights under the Pledge to veto any

20  transaction disposing of the Collateral securing his interests. All defendants,

21  including Walkers, participated in this fraudulent scheme with full knowledge of all

22  of the material facts they were concealing. *Id.*

23      Walkers was heavily involved in editing the documents to effectuate the

24  fraudulent asset transfer (the "Asset Transfers") from CBG to RAAD on the eve of

25  the sale to Remark. Walkers orchestrated the Asset Transfers that violated

26  Bobulinski's rights and worked hand-in-hand with Defendant Don Williams and his

27  firm Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin") to paper the

28  fraudulent Asset Transfers. (*Id.* ¶¶ 58, 87.) Based on detailed correspondence with

Williams and the other co-defendants, Walkers indisputably knew of the fraudulent purpose of the Asset Transfers but helped to orchestrate them anyway. (*Id.*)

During CBG's liquidation, the JOLs successfully argued Bobulinski was not a secured creditor because CBG had no assets that secured his loan. (*Id.* ¶¶ 69-73.) Bobulinski sued CBG's CEO, Adam Roseman, and learned on or about April 15, 2021, the nature of the fraudulent Asset Transfers. (*Id.* ¶¶ 74, 83-85.) He moved to amend his allegations and this Court allowed the amendment in part because he "had met his burden of showing diligence" under Federal Rule 16. (FAC ¶ 86; Dkt. 84 ["RJN"], Ex. D.)

On March 31, 2023, the Cayman Court of Appeal agreed with Bobulinski that his Proof of Debt "was decided against [Bobulinski] on a fundamentally false basis." (FAC ¶¶ 91-92.)

## III.    LEGAL STANDARD

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The trial court must accept all well-pled factual allegations as true and indulge every reasonable inference in the plaintiff's favor. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). If a Rule 12(b)(6) motion is granted, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotations and citations omitted).

In deciding a motion to dismiss, a court may consider documents alleged in a complaint and essential to a plaintiff's claims. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the

complaint, provided that the authenticity of those documents is not in dispute." *Tercica, Inc. v. Insmed Inc*., 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (emphasis in original).

## IV.   ARGUMENT

### A.   Walkers Is Subject to Personal Jurisdiction

#### 1.   The Court Has Specific Jurisdiction Over Walkers

To determine specific jurisdiction, a court examines whether: (1) the nonresident defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, thus invoking the benefit of forum laws; (2) the claims "arise[] out of or relate[] to" at least one of the defendant's contacts with the forum; and (3) the exercise of jurisdiction comports with "fair play and substantial justice." *Yahoo! Inc. v. La Ligue*, 433 F.3d 1199, 1206 (9th Cir. 2006).

##### (a)   The FAC Demonstrates Walkers' Purposeful Availment

Where, as here, an intentional tort is alleged, the Ninth Circuit has adopted the "effects" test, whereby a defendant can be subject to personal jurisdiction based on "intentional conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum]." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (quoting *Calder v. Jones*, 465 U.S. 783, 791 (1984)). Under the effects test, purposeful direction is established, where a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp*., 873 F.3d 1136, 1142 (9th Cir. 2017) (quotation omitted).

An intentional act sufficient to satisfy the first prong "is one denoting an external manifestation of the actor's will." *Morrill*, 873 F.3d at 1142. Here, Walkers committed such an intentional act by emailing Don Williams and the other co-defendants in an effort to circumvent Bobulinski's creditor rights under California law and by orchestrating. (FAC ¶¶ 55, 58.) Walkers further committed such an act

4

when it helped to orchestrate and facilitate the Asset Transfers (through California entities and instruments) that deprived Bobulinski of those rights and over which he sues. (*Id*. ¶¶ 55, 58, 87, 106-114); *see also EDIAS Software Int'l, L.L.C. v. BASIS Int'l, Ltd.*, 947 F. Supp. 413, 420 (D. Ariz. 1996) (sending email was intentional act under the "effects" test); *Cal. Software Inc. v. Reliability Research*, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986) (message posted on computer message board established jurisdiction based on the foreseeable injury felt in the forum).

Walkers argues that, even if it committed an intentional act, none of its acts were "expressly aimed at the forum state" because Walkers, a Cayman law firm, was representing Cayman clients in a Cayman liquidation proceeding of a Cayman entity (CBG). (Mot. 5.) But it is well-established that a nonresident defendant is subject to personal jurisdiction for acts that create *effects* in the forum State, whether or not the defendant ever entered the forum. *See Hall v. LaRonde*, 56 Cal. App. 4th 1342, 1344 (1997). Here, Walkers knew, or should have known, the effects its acts in the Cayman Islands would have on California. Walkers, as counsel to CBG's liquidators, knew, or should have known, that CBG, though incorporated in the Cayman Islands, was based in California, and that the Collateral which secured Bobulinski's loan was also located in California. (FAC ¶ 55.) Walkers also knew, or should have known, that RAAD, the entity used to facilitate the Asset Transfers, was a California limited liability company. (*Id*. ¶ 10; RJN, Ex. C.) Walkers argues the FAC does not allege Bobulinski lived in California at the time (Mot. 5), but as counsel for CBG's liquidators, Walkers knew or should have known that a California-based company would have California creditors, including Plaintiff here (indeed, those same liquidators sent the creditors annual reports on the status of the Estate). (*Id*. ¶¶ 55, 73.) In short, Walkers knew that its transfer of assets between two California companies would have effects in the forum.

In *Schneider v. Hardesty*, a Utah company's attorney drafted letters containing misrepresentations sent to Ohio investors. 669 F3d 693, 701-703 (6th

Cir. 2012). Like Walkers, the attorney argued that his client, not he, had mailed the letters and he had "no knowledge of the locations of the investors" and could not be subject to jurisdiction in Ohio as a result. The appellate court rejected that argument, noting that the attorney had transmitted the investors' names and addresses to a bank. *Id*. at 701. Thus, "the only possible explanation" for the attorney's claimed ignorance of the investors' locations is that the attorney "intentionally buried his head in the sand, and that cannot save [the attorney] from being subject to jurisdiction[.]" *Id*. The court further noted that what the attorney knew and when was a "factual dispute insufficient to defeat jurisdiction." *Id*. Thus, jurisdiction was proper over the attorney whose "intimate involvement" in creating the letters and knowledge of their intended purpose to defraud investors made him the "key actor" in directing the harm inflicted on investors in Ohio. *Id*. at 702-03.

Like the attorney in *Schneider,* Walkers would have had to "bury its head in the sand" not to know that its actions in assisting with Asset Transfers would not have effects in California, including on creditors such as Plaintiff. (*See* FAC ¶¶ 55-56); *see also Republic of Argentina v. Weltover, Inc*., 504 U.S. 607, 619 (1992) ("We reject [defendant's] suggestion that the 'direct effect' requirement cannot be satisfied where the plaintiffs are all foreign corporations with no other connections to the United States."); *Calder*, 465 U.S. at 788-789 (nonresidents subject to jurisdiction where a story they wrote and edited about plaintiff's activities in California caused reputational injury in California and the "brunt" of the injury was suffered by plaintiff in the State); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259-60 (9th Cir. 1989) (jurisdiction proper over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona). In any event, as in *Schneider*, what Walkers knew (and when) is a factual dispute, inappropriate for resolution at this stage of the proceedings. *Schneider*, 669 F.3d at 701.

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

The fact that Bobulinski's Proof of Debt was rejected in the Cayman Islands (Mot. 5) is likewise irrelevant. It is well-established that the entire "brunt" of the harm need not occur in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that other harm is suffered elsewhere. *Yahoo! Inc.*, 433 F.3d at 1207; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 780 (1984) (defendants subject to jurisdiction even though "bulk of the harm done to petitioner occurred outside" of forum).

### 2. Bobulinski's Claims Relate To or Arise Out of Walkers' Contacts with the Forum

The Ninth Circuit has adopted a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the element is satisfied if plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The relevant question is thus: but for Walkers' contacts with the United States and California, would Bobulinski's claims against defendants have arisen? The answer is no. Walkers facilitated the Asset Transfers by manipulating two California companies to the detriment of a California resident, using instruments governed under California law. There can be no question that Bobulinski's claims relate to and arise out of Walkers' contacts with the forum. *See Gilmore Bank v. AsiaTrust New Zealand Ltd.*, 223 Cal. App. 4th 1558, 1572-1574 (2014) (foreign company subject to jurisdiction where it was the "instrumentality" by which assets were transferred out of creditors' reach in California).

### 3. Exercising Jurisdiction Over Walkers Is Reasonable

Courts balance seven factors in determining whether exercising personal jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance

7

of the forum to the plaintiff's interest in convenient and effective relief;
and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 607 (citations omitted). These
factors indicate that jurisdiction over Walkers is reasonable. Bobulinski was a
California resident, who was seriously harmed by the transfers of assets between
two California companies. This shows the extent that Walkers interjected itself into
the forum and gives the United States a strong interest in adjudicating this matter.
*See Ayla, LLC v. Alya Skin Pty. Ltd.* 11 F.4th 972, 984 (9th Cir. 2021) (United States
has interest in protecting its citizens); *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of
Cal., Solano Cty.*, 480 U.S. 102, 114 (1987) (When "minimum contacts have been
established, often the interests of the plaintiff and the forum in the exercise of
jurisdiction will justify even the serious burdens placed on the alien defendant.").

Nor is asking Walkers to defend itself for the wrongful acts it directed at
California "unreasonable." Walkers fails to point to any "witnesses and evidence
relating to the allegations against [it]" that "are located in the Caymans Islands."
(*See* Mot. 7.) To the contrary, other witnesses, including defendants Sheppard
Mullin, Don Williams, and MGG, reside in or have offices in California and have
not challenged jurisdiction here. (FAC ¶ 26; Dkt. 50.) In any event, it is almost
certain that any relevant evidence is stored electronically and can be transmitted
across the globe instantaneously. *See Doe v. WebGroup Czech Republic, a.s.*, 93
F.4th 442, 458 (9th Cir. 2024) (dismissing similar argument made by Czech
defendant and holding that "the most efficient judicial resolution of this controversy
 concerning claims made by a U.S. citizen under U.S. law . . . would be in a U.S.
forum"); *Integral Dev. Corp. v. Weissenbach*, 99 Cal. App. 4th 576, 592 (2002) ("in
this era of fax machines and discount air travel," requiring German citizen "to

litigate in California is not constitutionally unreasonable") (internal citations and quotations omitted).[1]

Finally, the existence of an alternative forum in the Cayman Islands is irrelevant, as this factor is only considered when an American forum is shown to be unreasonable. *See Ayla*, 11 F.4th at 984.

Considering the array of factors, it cannot be considered unreasonable to exercise jurisdiction over Walkers here.

### B.    ALL CLAIMS ARE SUFFICIENTLY PLED

#### 1.    Plaintiff's RICO Claims Are Sufficiently Pled (Claims One and Two)

In his oppositions to motions to dismiss filed by other defendants, Bobulinski has thoroughly briefed the adequacy of his RICO allegations. *See*, *e.g.*, Dkt. at 18-21. Rather than repeat verbatim the general points of law in these briefs, Bobulinski incorporates them by reference and summarizes them here.

#### (a)    Bobulinski Has Alleged a Closed-Ended Pattern of Racketeering Activity Extending over Several Years

Walkers incorrectly argues that Plaintiff has failed to allege a RICO claim because he has not alleged "a threat of continued criminal activity." (Mot. 8.) Bobulinski alleges that Walkers participated in a *closed*-ended scheme, which can be shown by pleading "continuity over a closed period by proving a series of related predicates extending over a substantial period of time" and does not require "a threat of continuing activity." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995).

---

[1] While it is true that Walkers was not served in a "judicial district of the United States," as RICO's nationwide jurisdictional service provision requires (*see* Mot. 6), Bobulinski's RICO claim against Walkers is proper under California's long-arm statute. (*See* Section IV.A.1., *supra*); *see also Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183-1184 (C.D. Cal. 1998) (plaintiff may bring RICO action against non-U.S. residents by relying on long-arm statute of forum state).

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Here, the predicate activity spanned several years: almost immediately after Bobulinski signed an amendment to his Note in April 2016, co-defendant Hickory Grove and its agents fabricated the "Event of Default" under the Notes that pushed CBG into liquidation. (FAC ¶¶ 46-48.) Five months later, all defendants, including Walkers, facilitated the Asset Transfers to "work around" Bobulinski's creditor status (*id.* ¶¶ 69-76, 103-105) and thereafter "continually concealed" the facts of the Asset Transfers (*id.* ¶¶ 73, 98-99), including by sanctioning false statements in the Statement of Affairs and annual creditors reports, all of which set off a chain of events that resulted in the JOLs filing suit against Bobulinski in July 2020 to recover legal fees they had fraudulently been awarded in the Cayman proceedings (*id.* ¶¶ 74-95). This pattern spanned multiple years and easily meets the pleading requirements articulated in *Allwaste*.

Walkers' citation to *Yagman v. Kelly* (Mot. 9) is factually distinct and unavailing. In that case, a lone plaintiff brought a RICO claim against several defendants who allegedly fraudulently induced him to make a *single* payment of $126.90 for prescription medication premiums. 2018 WL 2138461, at *2 (C.D. Cal. March 20, 2018). The court noted that this was nothing more than a single act of fraud that "lasted just one month." *Id.* at *16. In contrast, Bobulinski has alleged a closed-ended scheme lasting years.

Walkers is also incorrect that Bobulinski has failed to allege a pattern of racketeering activity because he is a "single victim[.]" (*See* Mot. 8.) The reasonable inference from the FAC is that the Asset Transfers harmed not just Bobulinski, but other creditors (*see* FAC ¶ 97) who waived claims to the assets in question. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (in deciding motion to dismiss, a district court must draw all reasonable inferences in favor of the claimant). In any event, multiple victims are not always necessary to allege a pattern of racketeering activity. *See, e.g.* Dkt. 82 at 19; *see also Sun Sav. And Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 (9th Cir.

1987); *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997).

(b)    **Bobulinski Has Pled that Walkers Participated in the RICO Enterprise**

Bobulinski has adequately pled that Walkers participated in the RICO enterprise because he alleges Walkers was an active participant in drafting the Asset Transfer documents and was an essential part of the scheme to strip CBG of the Collateral securing Bobulinski's Note. (*See* Mot. 9-10; FAC ¶¶ 55, 58, 87, 106-114.) At the pleading stage, this is sufficient for the claim to proceed. *See Gonzalez v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1212 (C.D. Cal. 2006); *see also Gutierrez v. Givens*, 989 F. Supp. 1033, 1042 (S.D. Cal. 1997).

(c)    **Bobulinski Has Pled Conspiracy to Violate RICO**

Liability under § 1962(d) requires that the defendant "knowingly agree to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004). Bobulinski has met this standard at the pleading stage, alleging that Walkers knew as early as April 2016 that Bobulinski was in fact a senior secured creditor whose approval was needed to move assets out of CBG. (FAC ¶ 55.) Walkers was fully informed of the scope and purpose of the enterprise through its correspondence with other defendants, including Williams, who explicitly described how the Asset Transfers would proceed. (*Id.* ¶ 58.) Walkers knowingly contributed to this enterprise by reviewing and marking up the Asset Transfer deal documents when it joined in the fraud. (*Id.*)

2.    **Bobulinski States a Claim for Fraud (Third Claim)**

Walkers incorrectly contends it cannot be liable for the alleged nondisclosures because its relationship with Bobulinski does not give rise to a duty of disclosure. (*See* Mot. 13.) A duty to disclose exists where there is "some relationship" between the parties that gives rise to a duty to disclose. *See Hoffman v. 162 N. Wolfe LLC*,

11

228 Cal. App. 4th 1178, 1187 (2014). Such a relationship is present if there is "some

sort" of transaction between the parties. *Id*. Bobulinski has already explained the

basis for such a relationship in his opposition to the motion to dismiss filed by

Defendants Don Williams and Sheppard Mullin. *See* Dkt. 82 at 13; *see also*

*Pavicich v. Santucci*, 85 Cal. App. 4th 382, 386 (2000).

Here, Bobulinski was an investor in a company, which was taken over by the

JOLs (and their counsel, Walkers) after it went into liquidation. Walkers was

intimately aware of the documents memorializing Bobulinski's loans, knew of his

rights as a secured creditor under those agreements (FAC ¶¶ 115-116), and helped to

draft the documents that deprived Bobulinski of those same rights during the

liquidation (*see id*.). Walkers worked with the JOLs and the other co-defendants to

develop a "work around" to transfer the assets that secured Bobulinski's loan out of

CBG. (*Id*. ¶¶ 72, 116-117.) Unaware of the Asset Transfers, Bobulinski appealed his

Proof of Debt, which the JOLs, still under counsel by Walkers, rejected, not

discovering Defendants' fraud until years later. (*Id*. ¶¶ 71, 83-85.) These allegations

establish that "some" transaction-based relationship existed between the parties that

gives rise to a duty of disclosure. *See Pavicich,* 85 Cal. App. 4th at 386-387.

Discovery will reveal more.

*Hoffman v. 162 N. Wolfe LLC* is inapposite (*see* Mot. 13) because, in that

case, the court found no relationship existed between dominant and servient tenant

owners claiming rights to the same property, since they were never involved in any

transaction giving rise to a duty. *See* Dkt. 82 at 14.

Walkers is also not insulated from fraud merely because it is a law firm. *See*

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 291 (2004) (law firm

that prepared disclosure schedule liable for fraud to non-client for deliberately

omitting material facts); *see also* Dkt. 82 at 14.

Even assuming that the FAC does not sufficiently allege "some relationship,"

concealment "may exist where a party '[w]hile under no duty to speak, nevertheless

does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.'" *Vega*, 121 Cal. App. 4th at 294. The FAC alleges that Walkers was intimately involved in the planning of the Asset Transfers, including editing the deal documents. (FAC ¶¶ 55-58.) By giving its imprimatur to the Remark transaction—which was executed in direct contravention of Bobulinski's rights under his Pledge Agreement—Walkers made a fraudulent misrepresentation. *See Vega*, 121 Cal. App. 4th at 292 (even where no duty to disclose would otherwise exist, "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.") (internal citations omitted).

Bobulinski's FAC also lays out the "justifiable reliance" element required for fraud pleadings. *See Gunnoe v. Reassure Am. Life Ins. Co.*, 2013 WL 12131169, at *3 (C.D. Cal. Nov. 1, 2013). The FAC clearly alleges that Bobulinski would have acted differently if he had known about the Asset Transfers when they were executed. (*See*, *e.g.*, FAC ¶ 71.)

To the extent Walkers argues that the FAC does not meet the heightened burden standard under Rule 9(b), it ignores that pleading misrepresentation by omission "faces a slightly more relaxed burden," due to the plaintiff's inherent inability to specify the time, place, and specific content of an omission. *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2. The FAC appropriately identifies when the omission was made and what specifically Walkers omitted. (FAC ¶¶ 55-58.)

### (a)    The Litigation Privilege Does Not Apply

Walkers is wrong that the litigation privilege applies here (Mot. at 13) because the litigation privilege only applies "to torts arising from statements or publications" made in connection with judicial proceedings; it does not protect tortious, *noncommunicative* acts, even if they occur in anticipation of litigation, such

13

as those alleged here. *See Kimmel v. Goland*, 51 Cal.3d 202, 207-208 (1990) (taping of confidential telephone conversations not protected by litigation privilege, even where recordings were made in anticipation of litigation); *see also Wimbledon Fin. Master Fund Ltd. v. Binert Miller & Katzman, PLC,* 619 F. Supp. 3d 351, 367 (S.D.N.Y. 2022) (applying California law) (litigation privilege inapplicable where judgment creditor claimed injury from defendants' actions in disbursing client funds in violation of restraining notices and transfer of funds to effectuate settlement agreement, and not from any statement or publication made in relation to prior settlement resolving creditor claims).

The fraudulent Asset Transfers over which Bobulinski sues were non-communicative acts that was not made in litigation or in anticipation of litigation. (FAC ¶¶ 55, 58, 87, 106-114.) The litigation privilege simply does not apply. *See Wimbledon Fin. Master Fund Ltd.,* 619 F. Supp. 3d at 367.

### 3. Bobulinski States a Claim for Conspiracy to Commit Fraud (Fourth Claim)

The "agent's immunity rule" (the "Rule") does not apply to Bobulinski's allegations for civil conspiracy, for all of the reasons identified in the opposition to the motion to dismiss filed by Defendants Don Williams and Sheppard Mullin. *See* Dkt. 82 at 15; *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1037 (9th Cir. 2016).

Walkers owed Bobulinski an independent duty for the same reason Sheppard Mullin did. (*See* Section IV.B.2.a, *supra; see also* Dkt. 82 at 15-16.) Walkers also "went beyond the performance of a professional duty" as part of a conspiracy for the attorney's financial gain.[2] Its participation in the fraudulent transfers went beyond

---

[2] Walkers contends that there is no evidence of its financial gain in the FAC (Mot. 14.) Bobulinski disputes this contention and intends to take discovery on it as soon as he can. The conspiracy alleged was a secret, closed-door transaction, and it would be inappropriate to dismiss in favor of Walkers at this stage.

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

its professional duties in representing its client. It is axiomatic that the agent's immunity rule does not shield an attorney from fraud. *See Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1151 (2013).

Walkers incorrectly argues that the first prong of pleading conspiracy – formation and operation of the conspiracy – is not sufficiently pled. (*See* Mot. 15.)

Formation and operation of the conspiracy requires: "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013).

Bobulinski alleges Walkers knew of his creditor rights: Walkers associate Alexia Adda confirmed as much in an April 21, 2016 email to various fellow defendants. (FAC ¶ 55.) Despite knowing that Bobulinski's approval was actually needed to move assets out of CBG, Walkers forged ahead anyway, marking up drafts of the Asset Transfer documents and keeping in close correspondence with other defendants as the deal progressed. (*Id.* ¶¶ 55-58.) These allegations show when and how Walkers joined the conspiracy, and their continued involvement with the Asset Transfer deal shows it assented to join the wrongful activity. Discovery will reveal more.

### 4. Bobulinski States a Claim for Aiding and Abetting (Sixth and Eighth Claims)

Bobulinski has adequately pled Walkers aided and abetted the fraudulent transfers. Under California law, aiding and abetting an intentional tort, such as fraud, can create liability where the defendant *either* "'(a) [knew] the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other to so act or (b) [gave] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitute[d] a breach of duty to the third person.'" *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016).

Walkers claims the FAC fails to make specific allegations about its "substantial assistance" in effectuating the Asset Transfers. (*See* Mot. 16.) But the FAC alleges that Walkers knew the other defendants' conduct constituted a breach of duty and provided substantial assistance by pushing through the deal and Asset Transfers: Walkers not only *knew* CBG's assets were being transferred to RAAD (despite Bobulinski's refusal to sign a Distribution Agreement), it actively participated in the process by editing and providing comments on draft deal documents. (*See* FAC ¶¶ 55-58.) That is sufficient to plead knowledge, particularly since, "while fraud must be pled with specificity, '[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003). Again, discovery will reveal more.

"[A]llegations of fraud [or substantial assistance] must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neilson*, 290 F. Supp. 2d at 1132 (internal citations omitted). Here, the FAC specifically alleges that Walkers closely worked on the documentation necessary to effectuate the Asset Transfers. (*See* FAC ¶¶ 55-58; 107-114.) As the FAC emphasizes, the Asset Transfers were "such an essential part" of the Remark purchase that Walkers, as the JOLs' counsel, must have known that the transaction would violate the Pledge Agreement and injure Bobulinski. (*Id*. ¶ 114.) Despite this knowledge, Walkers aided and abetted the fraudulent transfer. (*See id.*) The allegations are specific as to Walkers. But, in any event, "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Sankey,* 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015).

### C.    ALL CLAIMS ARE TIMELY

#### 1.    The RICO Claims Are Timely

Bobulinski has already thoroughly briefed the timeliness of his RICO claims. *See* Dkt. 82 at 27-28. The lone case relied on by Walkers is distinguishable. In *Grimmett v. Brown*, the court explained that the plaintiff was aware of the injury because she alleged in a prior bankruptcy matter that a "common plan . . . defrauded [her] out of her rights under the Divorce Instrument[.]" 75 F.3d 506, 512 (9th Cir. 1996). Bobulinski, however, never made any prior allegations of conspiracy related to CBG: he did not suspect a conspiracy until Roseman's deposition. (FAC ¶¶ 83-87.)

#### 2.    Bobulinski's Fraud Claims Are Timely

Bobulinski has adequately pled delayed discovery of his fraud claims. While it is true that Bobulinski was on notice of certain fraudulent acts by *Roseman* by February 21, 2019 (Mot. 18), he was not on notice of this alleged fraud by *Walkers* and the other defendants until April 15, 2021 (FAC ¶¶ 74, 83).

Upon learning that CBG did not own the Collateral, as Roseman had said, Bobulinski timely sued him on February 21, 2019. (FAC ¶ 74.) Bobulinski litigated the Roseman case for years under the incorrect understanding that Roseman had simply misrepresented CBG's ownership of the Collateral. (*Id.* ¶¶ 38-40.) It was not until discovery in that case that Bobulinski discovered that he had suffered an entirely different form of harm. Roseman had actually been telling the truth about certain facts at the time of the execution of the Note and Pledge: CBG *did* have assets that secured Bobulinski's Note. But defendants, including Walkers, transferred those assets out of CBG during the Cayman Liquidation, which ultimately misled the Cayman Court into finding that CBG had no assets that would secure Bobulinski's loan. (*Id.* ¶ 73.) Thus, while Bobulinski received the assignments reflecting the Asset Transfers in September 2020 in response to a third-party subpoena (Mot. 19), the significance of those agreements did not become clear

until he deposed Roseman (*Id*. ¶¶ 83-85). Only then did Bobulinski learn that Roseman used CBG and RAAD "interchangeably," considered the assets of both companies under the same "umbrella," and that "the assets he transferred through the assignments were the same ones he told Bobulinski would secure his loan to CBG." (*Id*.) Bobulinski sought leave to amend his pleading against Roseman to add allegations about the Asset Transfers, which *this Court* granted. (*Id*. ¶ 86; RJN, Ex. D.) He then timely sued Defendants, laying out step-by-step these facts of delayed discovery. (Dkts. 1, 10.)

In *Fox v. Ethicon Endo-Surgery, Inc*., a plaintiff sued a surgeon who perforated her small intestine during surgery, only learning at the surgeon's deposition that he had used a surgical stapler that, in his experience, had caused similar perforations in the past. *Id.* at 803-805. The plaintiff amended her complaint to add a products liability claim against the stapler manufacturer, who successfully moved to dismiss on the grounds that the limitations period started when plaintiff discovered her injury. *Id*. The appellate court reversed and the California Supreme Court then affirmed, holding the plaintiff was unaware of the stapler's causal relationship to her injury until deposing the surgeon. *Id.* at 811. The *Fox* court explained that "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." *Id.* at 813; *see also E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1323 (2007) (recognizing *Fox* applies outside of products liability context and noting "two independent legal theories against two separate defendants can accrue at different times"); *see Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1526 (1995) (delayed discovery pled where plaintiff knew she had not received property but defendants concealed "key fact" that property had never been transferred to them).

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

The Court should rule similarly here and allow Bobulinski's claims to proceed. This is particularly true, since, in deciding this motion, the Court must accept Bobulinski's allegations that he did not discover the significance of the Asset Transfer documents until Roseman's deposition as true. *See Fox*, 35 Cal.4th at 811.

This Court previously granted Bobulinski's motion for leave to amend his complaint against Roseman on the same facts, finding Bobulinski "had met his burden of showing diligence" applicable there. (*See* RJN, Ex. D ("The Court will give Plaintiff the benefit of the doubt that he pieced together the facts underlying his proposed amended complaint only after taking Roseman's deposition in April 2021.").) The Court should not alter its findings here.

Indeed, when "reasonable minds could differ" on when the discovery rule started the clock on the statute of limitations, it is a question of fact and courts will not dispose of a claim, even on summary judgment. *See Kernan v. Regents of Univ. of Cal.*, 83 Cal. App. 5th 675, 684 (2022); *Enfield v. Hunt*, 91 Cal. App. 3d 417, 419-20 (1979).

### 3.   The Aiding and Abetting Claims Are Not Time-Barred

#### (a)   The Statute of Repose Does Not Bar the Fraudulent Transfer Claims

Walkers' contention that Bobulinski's fraudulent transfer claims are barred by a seven-year statute of repose appears based on a misreading of the relevant statute. (*See* Mot. 19-20.)

California Civil Code § 3439.09(c) codifies the statute of repose for the California Uniform Voidable Transfer Act ("CUVTA"), stating that "a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

California Civil Code § 3439.06(a)(2) explains when a "transfer is made" under the CUVTA: "With respect to an asset that is not real property or that is a

fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee."

In *Fujifilm Corp. v. Yang*, the appellate court instructed that, under Civil Code § 3439.06(a)(1) (the analogous subsection concerning real property transfers), the jury could properly find that, given the statutory language, the fraudulent transfer took place not when the quitclaim deed was executed, but when it was "perfected" or recorded because that was the last day a good faith purchaser could not acquire an interest in the transferred property. 223 Cal. App. 4th 326, 336 (2014).

In *PGA West Residential Association v. Hulven International, Inc.*, the court explained that the statute of repose begins to run on "the date of the last culpable act or omission of the defendant" tied to the fraudulent transfer, which, in that case, was when "the deed of trust [was] recorded against the property." 14 Cal. App. 5th 156, 177, 187 n. 24 (2017) (quotations and citations omitted).

So, too, here the statute of repose is triggered by "the date of the last culpable act or omission" of Walkers related to the transfer, not by the execution of the agreements that set that transfer in motion. *See id*. at 177. That date is a factual determination, precluding dismissal. *See Cadles of W. Va., LLC v. Alvarez*, 2023 WL 4280786, at \*9 (S.D. Cal. June 29, 2023) (denying summary judgment where transfers occurred "at an unknown time").

### (b)   Section 340.6 Does Not Apply

"By its own terms," section 340.6 does not govern claims for actual fraud, including any action for conspiracy based upon fraud. *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1122 (2014); *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 321 (2013).

With respect to the fraudulent transfer claims, the Supreme Court has "long held" the term "'actual fraud' to encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky Int'l Elecs., Inc.*

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*v. Ritz*, 578 U.S. 355, 366 (2016). Civil Code 3439 of the CUVTA itself has two prongs: "Actual fraud, as defined in subdivision (a)(1), is a transfer made with "actual intent to hinder, delay or defraud any creditor of the debtor." Cal. Civ. Code § 3439(a)(1). Constructive fraud, as defined in subdivision (a)(2), requires a showing that the debtor did not receive "reasonably equivalent" value for the transfer . . . ." Cal. Civ. Code § 3439(a)(2). Insofar as Section 3439(a)(1) applies to Bobulinski's claims, he alleges actual fraud and Section 340.6 does not apply as a matter of law. *See Quintilliani v. Mannerino*, 62 Cal. App. 4th 54, 64, 72 (1998).

Section 340.6 does not apply anyway because Bobulinski does not sue Walkers for any act "arising from" its "professional services" as attorneys, as "contemplated in a legal services contract" or the Rules of Professional Conduct. *See Lee v. Hanley*, 61 Cal.4th 1225, 1237 (2015). Bobulinski does not allege Walkers breached a fiduciary duty or owed him duties as his attorneys. Instead, he alleges Walkers worked in concert with the JOLs and other defendants to orchestrate the Asset Transfers after Bobulinski refused to subordinate his creditor rights – i.e., the "same wrongs alleged against the other defendants." *See id.* (Section 340.6 inapplicable to "garden-variety theft"); *Abselet v. Levene Neale Bender Yoo and Brill L.L.P.,* 2017 WL 10403275, at *9 (C.D. Cal. Aug. 10, 2017) (refusing to apply Section 340.6 where allegations against law firm were "the same wrongs alleged against the other defendants").

## V.    LEAVE TO AMEND SHOULD BE GRANTED

Should the Court find any of the FAC's allegations insufficient, Bobulinski respectfully requests leave to amend. *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 865 (C.D. Cal. 2022) (leave to amend "should be freely granted unless it is clear the complaint could not be saved by any amendment").

## VI.    THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION

As previously briefed in this matter, even if the RICO claims are dismissed, the Court should retain jurisdiction over remaining state law claims. *See, e.g.* Dkts. 81 at 28; *see also Batiste v. Island Records Inc.*, 179 F.3d 217, 228 (5th Cir. 1999).

## VII.    CONCLUSION

Based on the foregoing, Bobulinski respectfully requests that the Court deny the Motion in its entirety. If the Court grants any portion of the Motion, Bobulinski respectfully requests leave to amend.

DATED:  November 8, 2024          WAYMAKER LLP

By:  */s/ Jaime W. Marquart*
    Ryan G. Baker
    Jaime W. Marquart
    Teresa L. Huggins
    Sam S. Meehan
    *Attorneys for Plaintiff Tony Bobulinski*

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**STATEMENT OF COMPLIANCE**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Plaintiff Tony Bobulinski, certifies that, based on the word processing program used to prepare this memorandum of points and authorities, the memorandum of points and authorities contains 6,934 words (including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block), which complies with the word limit of L.R. 11-6.1 (7,000 words).

DATED:  November 8, 2024          WAYMAKER LLP


By:  */s/ Jaime W. Marquart*
    Ryan G. Baker
    Jaime W. Marquart
    Teresa L. Huggins
    Sam S. Meehan
    *Attorneys for Plaintiff Tony Bobulinski*

PLAINTIFF TONY BOBULINSKI'S OPPOSITION TO DEFENDANT WALKERS (CAYMAN), LLP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT