UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)          Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                     Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendants:
          None Present                     None Present

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANTS' MOTIONS TO
                                 DISMISS WITH LEAVE TO AMEND [50] [53] [55]
                                 [78] [92]

Before the Court are five motions to dismiss (collectively, the "Motions"):

The first Motion to Dismiss ("MGG MTD") was filed on September 9, 2024, by
Defendant MGG Investment Group, LP ("MGG").  (Docket No. 50).  Plaintiff Tony
Bobulinski ("Plaintiff") filed an Opposition on October 14, 2024 ("MGG Opp.").
(Docket No. 83).  MGG filed a Reply on October 28, 2024 ("MGG Reply").  (Docket
No. 86).

The second Motion to Dismiss ("Sheppard Mullin MTD") was filed on
September 9, 2024, by Defendants Don Williams and Sheppard Mullin Richter &
Hampton LLP ("Sheppard Mullin") (collectively, the "Sheppard Mullin Defendants").
(Docket No. 53).  Plaintiff filed an Opposition on October 14, 2024 ("Sheppard Mullin
Opp.").  (Docket No. 182).  The Sheppard Mullin Defendants filed a Reply on October
28, 2024 ("Sheppard Mullin Reply").  (Docket No. 88).

The third Motion to Dismiss ("Hickory Grove MTD") was filed on September 9,
2024, by Defendants Theresa Roche and Hickory Grove, LLC ("Hickory Grove")
(collectively, the "Hickory Grove Defendants").  (Docket No. 55).  Plaintiff filed an
Opposition on October 14, 2024 ("Hickory Grove Opp.").  (Docket No. 81).  The
Hickory Grove Defendants filed a Reply on October 28, 2024 ("Hickory Grove
Reply").  (Docket No. 87).

_____
**CIVIL MINUTES—GENERAL**                                          1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                  Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

The fourth Motion to Dismiss ("Walkers MTD") was filed on October 11, 2024, by Defendant Walkers (Cayman) LLP ("Walkers").  (Docket No. 78).  Plaintiff filed an Opposition on November 8, 2024 ("Walkers Opp.").  (Docket No. 91).  Walkers filed a Reply on November 22, 2024 ("Savage Reply").  (Docket No. 96).

The fifth Motion to Dismiss ("Grant MTD") was filed on November 15, 2024, by Defendants Grant Thornton Specialist Services (Cayman) Ltd. ("Grant"), Hugh Dickson, and Phillip Tyrrell (collectively, the "Grant Defendants").  (Docket No. 92).  Plaintiff filed an Opposition on December 6, 2024 ("Grant Opp.").  (Docket No. 99).  The Grant Defendants filed a Reply on December 26, 2024 ("Grant Reply").  (Docket No. 100).

The Court has read and considered the papers on the Motions and held a hearing on **January 13, 2025**.

For the reasons set forth below, all five Motions are **GRANTED** *with leave to amend*.  Plaintiff fails to establish personal jurisdiction over the Hickory Grove Defendants, Walkers, and the Grant Defendants.  Plaintiff's RICO claims fail, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.    BACKGROUND

The Court summarizes the allegations in the First Amended Complaint ("FAC") in the light most favorable to Plaintiffs as follows:

On or about March 5, 2015, Adam Roseman, founder and CEO of a now-defunct Cayman Islands company called China Branding Group ("CBG"), emailed Plaintiff seeking a short-term bridge loan for CBG.  (FAC (Docket No. 10) ¶ 38).  CBG's primary business was to provide live event and media content into the Chinese marketplace.  (*Id.* ¶ 37).  In e-mail correspondences, Roseman wrote that the loan was to be "a senior secured loan to be paid off in first priority" and secured by CBG's assets.  (*Id.*).  Plaintiff expressed interest in issuing the loan and later had conversations with Roseman, where Roseman represented that CBG owned the rights and interests in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

certain assets, including a content library, license agreements, and physical assets, such as production equipment (the "Collateral").  (*Id.*).

On or about April 15, 2015, Plaintiff entered into the Senior Secured Promissory Note (the "Note") and a corresponding Pledge Agreement (the "Pledge Agreement"). (*Id.* ¶ 41).  In doing so, Plaintiff provided CBG with a $500,000 loan in reliance on the assurances that (1) his Note was secured by the Collateral, (2) he would receive a 2.5 multiplier of his principal, and (3) he had the right to approve any sale of CBG.  (*Id.*). The Note and Pledge Agreement were drafted by Don Williams of Sheppard Mullin, fully approved by CBG's Board, and countersigned by Roseman, on behalf of CBG. (*Id.*).  Plaintiff also negotiated Paragraph 7 of the Pledge Agreement, which required CBG to obtain his written consent before transferring or selling any Collateral.  (*Id.* ¶ 43).

In the Fall of 2015, Plaintiff introduced CBG to Remark Media Inc. ("Remark"). (*Id.* ¶ 43).  After one of CBG's shareholders vetoed Remark's proposed acquisition of CBG, Remark signed a Letter of Intent to purchase valuable assets from CBG for $23.5 million, in the form of $7.5 million in cash and four-year warrants to purchase up to 6.25 million shares of Remark's common stock at an exercise price of $10 per share subject to certain anti-dilution adjustments.  (*Id.* ¶ 45).  The assets included event licenses, such as those with Dick Clark Productions for the Billboard Music Awards, the Golden Globes, American Music Awards, Hollywood Film Awards, New Years Rockin' Eve, the Rock in Rio music festival, and social media contracts for over 95 celebrities.  (*Id.* ¶ 44).

On April 11, 2016, Plaintiff signed an amendment to the Note reflecting an increase in his loan to CBG from $500,000 to $650,000.  (*Id.* ¶ 46).  The Amendment did not affect either CBG's or Plaintiff's rights or obligations under the Note or Pledge Agreement and made no changes to the Collateral, meaning that Plaintiff's increased loan amount was secured by the same Collateral as his original loan.  (*Id.*).

On April 24, 2016, after receiving a $23.5 million offer from Remark, CBG sent correspondence to its noteholders ("Noteholders"), claiming CBG was unable to meet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

outstanding payment obligations, even though no Noteholders were due payments at
that time (the "Event of Default").  (*Id.* ¶ 48).

On April 28, 2016, Hickory Grove, CBG's largest creditor, initiated the wind-up
proceeding.  (*Id.* at ¶ 48).  On August 18, 2016, a Cayman Island court issued a
winding up order putting CBG into official liquidation and appointing Joint Official
Liquidators (the "JOLs") to oversee the liquidation.  (*Id.* ¶ 49).  That same day, the sale
of CBG to Remark was sanctioned by the Cayman Island court.  (*Id.* ¶ 9).

In April 2021, through deposition testimony in another litigation, Plaintiff
learned that CBG and its JOLs worked in concert on the eve of the sale to Remark to
secretly move assets that qualified as Collateral to other companies (the "Asset
Transfer").  (*Id.* ¶ 10). One of those companies was RAAD Productions, LLC
("RAAD").  (*Id.*).  Specifically, on September 19, 2016, the three largest shareholders
of RAAD, including Hickory Grove, entered into an agreement with CBG in which
RAAD became a wholly owned subsidiary of CBG.  (*Id.*).  The next day, the shares in
RAAD were sold to CBG for only $10, and Hugh Dickson of the JOLs, on behalf of
RAAD, entered into a series of secret assignment agreements with CBG in which CBG
transferred key assets to RAAD. (*Id.*).

On September 20, 2016, CBG, now cleared of key assets, entered into the Asset
and Securities Purchase Agreement ("APA")— an agreement to sell three of its
subsidiaries (which now included RAAD) to Remark.  (*Id.*).  As part of the APA,
CBG, under the advisement of the Sheppard Mullin Defendants, asked its Noteholders
to enter into distribution agreements (the "Distribution Agreements") subordinating
their claims to CBG's unsecured creditors.  (*Id.* ¶ 53).  The Distribution Agreements
negated the pledge agreements of all Noteholders, which prevented CBG from
transferring pledged assets without the Noteholders' consent.  (*Id.*).  All Noteholders
but Plaintiff signed the Distribution Agreements, meaning Plaintiff alone preserved his
right to stop any deal by CBG to transfer its pledged assets.  (*Id.*).

Despite Plaintiff's refusal to sign the Distribution Agreement, all of the
Defendants pushed for the deal with Remark to close with or without Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

signature.  (*Id.* ¶ 63).  They used the Asset Transfer as the "work around" they needed
for Plaintiff's refusal to waive his rights.  (*Id.*).

Remark's purchase constituted a "Liquidity Event" under the Note.  Therefore,
CBG was required to pay Plaintiff's principal loan amount with the promised 2.5
multiplier upon the close of the sale to Remark.  (*Id.* ¶ 69).  Plaintiff thus submitted a
Proof of Debt to the JOLs during the liquidation in the Cayman Islands for $1,625,000,
plus legal fees.  (*Id.*).  The JOLs rejected the Proof of Debt by written letter signed by
Hugh Dickson on June 14, 2017, claiming Plaintiff was only owed a return of his
$650,000 and a finder's fee.  (*Id.*).  The JOLs also claimed the Note was not secured by
the Collateral.  (*Id.*).

Because, at the time, Plaintiff had no knowledge of the Asset Transfer, Plaintiff
tried to appeal the Proof of Debt decision in a Cayman Island court, where he was
denied any discovery rights.  (*Id.* ¶ 71).  In the litigation that ensued, the JOLs argued
that Plaintiff was not a secured creditor because RAAD, and not CBG, owned the
Collateral.  (*Id.*).  Based on this argument, the Cayman Island court concluded CBG
did not breach Paragraph 7 of the Pledge Agreement, which required Plaintiff's
consent before CBG could transfer assets to Remark.  (*Id.*).  The Grand Court of the
Cayman Islands rejected Plaintiff's appeal on January 23, 2019 (the "Cayman
Judgment").  (*Id.* ¶ 74).

On February 21, 2019, Plaintiff sued Roseman in California state court for (1)
fraud in the inducement, (2) negligent misrepresentation, and (3) breach of fiduciary
duty.  (*Id.* ¶ 75).  Plaintiff alleged that, to induce him to loan $650,000 to CBG,
Roseman misrepresented the CBG assets that would secure his loans.  (*Id.*).  Roseman
removed the case to the Central District of California on April 17, 2019.  (*Id.* ¶ 76).
On July 10, 2019, Plaintiff filed his First Amended Complaint, and, after motion
practice, ultimately proceeded on two claims: (1) fraud in the inducement, and (2)
negligent misrepresentation.  (*Id.*); (*see also* CV-19-02963-MWF (SSx) (the "Roseman
Action")).

On July 28, 2020, CBG, by and through the JOLs, sued Plaintiff in the Central
District of California to enforce the Cayman Judgment.  (*Id.* ¶ 77).  On February 18,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

2021, the district court entered judgment against Plaintiff in the amount of
$662,855.95, plus costs of suit.  (*Id.*).  While litigating these cases and a subsequent
appeal, Plaintiff continued prosecuting the Roseman Action with party and third-party
discovery.  (*Id.* ¶ 84).  On March 31, 2021, Roseman produced the assignment
agreements.  (*Id.* ¶ 84).  During a deposition of Roseman held on April 15, 2021,
Roseman admitted that he signed an agreement to make RAAD a wholly owned
subsidiary of CBG prior to the sale of CBG to Remark.  (*Id.* ¶ 85).  At the deposition,
Plaintiff pieced together the puzzle of the fraud.  (*Id.* ¶ 86).

On July 9 and 16, 2021, Plaintiff deposed Dickson in the Roseman Action,
where he acknowledged the Asset Transfers but could not explain why he and the
JOLs had not disclosed them.  (*Id.*).

On October 4, 2021, Plaintiff moved the Cayman Island Court of Appeal for
leave to appeal the Cayman Judgment and cost orders they had entered against him.
(*Id.*).  On March 31, 2023, the court issued a ruling in which it found that the JOLs had
failed to disclose the following: (1) the assignment agreements, in which CBG and the
JOLs transferred certain licenses of CBG to RAAD; and (2) the disclosure schedule of
the APA for that sale, which listed those licenses.  (*Id.* ¶ 91).  The court modified the
cost orders against Plaintiff, ordered the JOLs to pay certain costs to Plaintiff, and held
that Plaintiff had leave to file "a fresh appeal in the Grand Court[.]"  (*Id.* at ¶¶ 93–94).

Plaintiff alleges that all Defendants knew of his rights under the Pledge
Agreement.  (*Id.* ¶ 55).  Broadly, each Defendant's participation in the scheme is
alleged as follows:

MGG was a lender to Remark in the transaction, and it held all of the funds for
closing in escrow, such that the transaction could not close without its consent.  (*Id.* ¶
103).  MGG was deeply involved in the transaction and oversaw the due diligence for
Remark.  (*Id.*).

Williams and Sheppard Mullin were CBG's counsel, drafted the Note and the
Pledge Agreement that prohibited the transfers, helped negotiate and orchestrate the
assignment agreements with the JOLs that effected the Asset Transfers and continued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

to advise CBG and its liquidators on CBG's creditors' rights throughout the liquidation.  (*Id.* ¶ 56).

Hickory Grove, through its managing member, Theresa Roche, manufactured the Event of Default that pushed CBG into liquidation.  (*Id.* at ¶ 48).  During the ensuing liquidation, Hickory Grove sold its shares in RAAD, turning RAAD into a subsidiary of CBG to allow for the Asset Transfers.  (*Id.* ¶ 52).

Walkers represented the JOLs in the liquidation proceeding of CBG.  Walkers worked hand-in-hand with the Sheppard Mullin Defendants to paper the fraudulent Asset Transfers.  (*Id.* ¶¶ 58, 87).

Dickson, who was one of the JOLs, signed the assignment agreements on behalf of RAAD that allowed RAAD to transfer all of its shares to CBG, turning RAAD into a subsidiary of CBG.  (*Id.* ¶ 64.)  Both Dickson and Tyrrell were employees of Grant throughout the liquidation in the Cayman Islands and at all relevant times. (*Id.* ¶¶ 58, 110, 166.)  Dickson, on behalf of the JOLs, rejected the Proof of Debt, sending Plaintiff a letter informing him that he was not a secured creditor of CBG but failing to disclose the Asset Transfers. (*Id.* at 69).  During the litigation that followed, the JOLs successfully argued Plaintiff was not a secured creditor because CBG had no assets that secured his loan.  (*Id.* ¶¶ 69-73.)

Plaintiff brings the following causes of action against the above-named Defendants:

- (1) RICO Violation - 18 U.S.C. § 1962(c) against all Defendants;

- (2) RICO Violation - 18 U.S.C. § 1962(d) against all Defendants;

- (3) Fraud against all Defendants;

- (4) Civil Conspiracy to Commit Fraud against all Defendants;

- (5) Common Law Fraudulent Transfer against Dickson and Grant;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

- (6) Aiding and Abetting Common Law Fraudulent Transfer against
  Robert Roche, Hickory Grove, Theresa Roche, the Sheppard Mullin
  Defendants, Tyrrell, Walkers and MGG;

- (7) Violations of Cal. Civ. Code § 3439 against Dickson and Grant; and

- (8) Aiding and Abetting Violations of Cal. Civ. Code § 3439 against
  Hickory Grove, Theresa Roche, the Sheppard Mullin Defendants, Tyrrell,
  Walkers, and MGG.

(FAC ¶¶ 119–172).

## II.    REQUESTS FOR JUDICIAL NOTICE

Both parties filed requests for judicial notice.  (Docket Nos. 51, 54, 66, 79, 84,
89, 98).

The Court **GRANTS** judicial notice of the documents cited in this Order, which
are "court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa
USA*, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Grant v. Aurora Loan
Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases for
proposition that publicly recorded documents are judicially noticeable).  Both parties
submitted requests for other documents the Court need not consider to render a
decision on the Motions.  These requests are **DENIED** *as moot*.

## III.   EVIDENTIARY OBJECTIONS

Plaintiff filed evidentiary objections to the Declaration of Matthew Gloucke in
Support of the Walkers MTD on November 8, 2024.  (Docket No. 90).  Walkers filed a
response to the objections on November 22, 2024.  (Docket No. 97).  Because the
Court did not rely on the three paragraphs subject to Plaintiff's objections, the
objections are **OVERRULED** *as moot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)           Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

## IV.    LEGAL STANDARD

### A.    Rule 12(b)(2)

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction.  "In opposition
to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears
the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d
1011, 1015 (9th Cir. 2008).  The court may consider evidence presented in affidavits to
assist it in its determination and may order discovery on the jurisdictional issues.
*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also
Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.
1977).  Because the motions are based on written materials rather than an evidentiary
hearing, "[P]laintiff need only make a prima facie showing of jurisdictional facts."
*Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990).

When considering a motion to dismiss for lack of personal jurisdiction, courts
are not confined to the plaintiff's complaint; it is appropriate to consider evidence such
as party declarations.  *See*, *e.g*., *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp.
3d 938, 949 (N.D. Cal. 2015) ("A trial court may rule on the issue of personal
jurisdiction by 'relying on affidavits and discovery materials without holding an
evidentiary hearing'") (quoting *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299,
301 (9th Cir. 1986)).  The Court "may not assume the truth of allegations in a pleading
which are contradicted by affidavit, but [it] resolve[s] factual disputes in the plaintiff's
favor."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)
(internal quotation marks and citations omitted).

### B.    Rule 12(b)(6)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and
their Ninth Circuit progeny.  "To survive a motion to dismiss, a complaint must
contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its
face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must
disregard allegations that are legal conclusions, even when disguised as facts.  *See id*.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props.*, 751 F.3d at 995 (citation omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

## V.    DISCUSSION

The Court begins its analysis by evaluating arguments that it lacks jurisdiction over the Hickory Grove Defendants, Walkers, and the Grant Defendants.

### A.    Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  "California's long-arm statute," Cal. Code Civ. Proc. § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  *Id.*  Because section 410.10 "is coextensive with federal due process requirements . . . , the jurisdictional analyses under state law and federal due process are the same."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted).

There are two general varieties of personal jurisdiction: general and specific. General jurisdiction, which "permits a court to hear any and all claims against a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                 Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

defendant, whether or not the conduct at issue has any connection to the forum," may only be exercised where a defendant's contacts with the forum are "continuous and systematic." *Ranza*, 793 F.3d at 1069–70 (internal quotation marks and citations omitted). "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  In order to be subject to a court's specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Here, Plaintiff acknowledges that the Court does not have general jurisdictional over the Hickory Grove Defendants, Walkers, or the Grant Defendants.  Rather, Plaintiff argues that personal jurisdiction exists pursuant to specific jurisdiction and/or a jurisdictional provision of the RICO statute, 18 U.S.C. § 1965(b).

### 1. Specific Jurisdiction

Courts may "exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (internal quotation marks and citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

"A 'purposeful availment analysis is used for cases sounding in contract. . . . By contrast, a 'purposeful direction' analysis . . . 'is most often used in suits sounding in tort.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)          Date:  February 20, 2025

Title:  Tony Bobulinski v. Hugh Dickson et al

To begin, the Court notes that the FAC generally alleges that "Defendants are subject to personal jurisdiction in this judicial district" because Defendants "either reside in this judicial district or have purposefully availed themselves of the opportunity to conduct commercial activities in this forum . . ."  (FAC ¶ 36).  And in one Opposition, Plaintiff bases his argument on the "purposeful availment" analysis. (*See* Hickory Grove Opp. at 12).  In two other Oppositions, however, Plaintiff applies the "purposeful direction" analysis.  (*See* Grant Opp. at 14, Walkers Opp. at 12).

While the phrase "purposeful availment" is often used "in shorthand fashion, to include both purposeful availment and purposeful direction, *Schwarzenegger*, 374 F.3d at 802, the Court clarifies that the appropriate analysis is governed by the "purposeful direction" test enunciated in *Calder v. Jones*, 465 U.S. 783, 788–89 (1984).  This is so because Plaintiffs' claims sound in tort, and the alleged tortious actions appear to have occurred outside of the forum state.  *See Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (clarifying *Calder* "applies in suits sounding in tort where the tort was committed outside the forum state."); *see also Marani v. Cramer*, No. 19-CV-05538-YGR (DMR), 2024 WL 1511329, at *4 (N.D. Cal. Feb. 2, 2024) (concluding plaintiff's "state law claims for fraud, conversion, and unjust enrichment along with claims for RICO and RICO conspiracy based on wire fraud . . . sound in tort.").

The Ninth Circuit construes *Calder* as imposing three requirements, also referred to as the "effects" test: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006) (alteration in original) (quoting *Schwarzenegger*, 374 F.3d at 803).  The effects test looks "to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there."  *Picot v. Weston*, 780 F.3d 1206, 1214–15 (9th Cir. 2015) (quoting *Walden*, 571 U.S. at 285).  "[M]ere injury to a forum resident is not a sufficient connection to the forum," and "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* (quoting *Walden*, 571 U.S. at 290).  With respect to the "express aiming" prong of the effects test, "something more" is required than a "foreign act with foreseeable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

effects in the forum state." *Pakootas*, 905 F.3d at 577 (internal quotation marks and citation omitted).

### a. Hickory Grove Defendants

As pled, Plaintiff has not established that personal jurisdiction exists as to either of the Hickory Grove Defendants.  Specifically, Plaintiff has failed to show that the intentional acts of either Hickory Grove or Theresa Roche were expressly aimed at California.

As to the first prong of the effects test, Plaintiff has sufficiently alleged that Hickory Grove and Theresa Roche committed intentional acts.  Hickory Grove allegedly "pushed CBG to enter liquidation", failed to "identif[y] [Plaintiff] as a secured creditor to the JOLs" during the liquidation proceedings, "continually concealed the Asset Transfers from [Plaintiff]," issued false statements in the Statement of Affairs, and transferred its shares in RAAD to CBG without Plaintiff's approval.  (FAC ¶¶ 98–100).  Theresa Roche allegedly signed the distribution agreement entered into by Hickory Grove.  (*Id.* ¶ 97).

However, Plaintiff has failed to establish that these acts were expressly aimed at California.  Because Plaintiff applied the "purposeful availment" analysis, his Opposition broadly describes the alleged "contacts" Hickory Grove had with the forum state.  (*See e.g.*, Hickory Grove Opp. at 12) (stating Hickory Grove entered into "a series of contracts, all of which had California choice of law and forum provisions.").  But the correct analysis asks whether "defendant's ***allegedly tortious action*** was 'expressly aimed at the forum.'"  *Picot*, 780 F.3d at 1214 (emphasis added).  Moreover, Plaintiff's arguments regarding the alleged tortious conduct—the transfer of assets from CBG to RAAD—improperly focuses on Hickory Grove's contacts with companies who are allegedly domiciled—for purposes of the jurisdictional analysis—in the forum state, and not on Hickory Grove's "contacts with the forum State itself." *Id.*;(*see also* Hickory Grove Opp. at 13) (arguing Plaintiff's claims arise out of Hickory Grove's contacts with California because it "manipulat[ed] . . . two California companies").  The Court further notes that Plaintiff's description of CBG as a "California-based company" in his various oppositions directly contradicts facts pled

---

**CIVIL MINUTES—GENERAL**                                                              13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

in the FAC, which repeatedly describe CBG as a "Cayman Islands corporation." (*See e.g.*, FAC ¶ 37 ("CBG was a Cayman Islands corporation, whose primary business was to provide live event and media content into the Chinese marketplace."); *Id.* ¶ 1 (Plaintiff provided funding to "a now-defunct Cayman Islands company called China Branding Group ("CBG")[.]")).

Accordingly, Plaintiff has failed to establish personal jurisdiction as to Hickory Grove.

As to Theresa Roche, Plaintiff argues she is subject to jurisdiction because she was a primary participant in the tortious action intentionally directed at a California resident. (*See* Hickory Grove Opp. at 13) (citing *Calder*, 465 U.S. at 790). Not only is this argument also improperly focused on the defendant's contact with a resident of the forum, but it also contradicts facts pled in the FAC. For example, the FAC states that Hickory Grove is an entity "wholly controlled" by Theresa Roche's brother, Robert. (*See e.g.*, FAC ¶ 97) (stating "Robert Roche was . . . the principal of Hickory Grove, an entity he wholly controlled[]" and "Theresa Roche of Hickory Grove, an entity controlled entirely by her brother Robert Roche"). In fact, the only action Theresa Roche is alleged to have committed in support of the scheme was signing a distribution agreement on behalf of Hickory Grove. But it is unclear how Theresa's signing of an agreement that did not affect the rights of Plaintiff or other creditors was expressly aimed at California.

Accordingly, Plaintiff has similarly failed to establish personal jurisdiction as to Theresa Roche.

### b. Walkers

For similar reasons, Plaintiff has failed to establish that personal jurisdiction exists over Walkers.

The intentional acts committed by Walkers are alleged to be the following: (1) sending an email on April 21, 2016— "months before the transaction closed"— acknowledging Plaintiff's senior secured status; (2) reviewing and revising the

---

CIVIL MINUTES—GENERAL                                                14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)            Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

transaction documents relating to the Asset Transfer; and (3) responding to an email, "advising that the JOLs had reviewed and approved the RAAD Sale and Purchase Agreement and had no further comments." (*See* Walkers Opp. at 12–13) (citing to FAC ¶¶ 55, 58, 87, 106–114).

The Court concludes that Plaintiff has not demonstrated how these allegedly intentional acts were "expressly aimed" at California.  Specifically, Plaintiff has failed to demonstrate "something more" than a "foreign act with foreseeable effects in the forum state." *Pakootas*, 905 F.3d at 577.  In reaching its conclusion, the Court principally relies on three cases:

*First*, in *Calder*, the Supreme Court, applying the "effects test" for the first time, upheld the exercise of personal jurisdiction even though defendants had no physical contact with the forum state of California and their actions all took place in Florida. *Calder*, 465 U.S. at 788.  The plaintiff, a California resident, was a professional actress who brought a lawsuit in California Superior Court alleging she had been libeled in an article that was written and edited by the defendants in Florida. *Id.* at 784.  The magazine in which the story was printed had a large circulation in California, "[t]he allegedly libelous story concerned the California activities" of the plaintiff, and the story "impugned the professionalism of" the plaintiff "whose television career was centered in California. *Id.* at 788.  Moreover, the Court acknowledged that "[t]he article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89.  As such, "California [was] the focal point both of the story and of the harm suffered." *Id.* at 789.  Jurisdiction was therefore proper because "intentional conduct in Florida [was] calculated to cause injury to respondent in California. *Id.* at 791.

*Second*, in *Walden*, the Supreme Court rejected the contention that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts. *Walden*, 571 U.S. at 289–90.  There, airline passengers brought a *Bivens* action in Nevada alleging that their money had been illegally seized by a federal agent in a Georgia airport. *Id.* at 280–81.  The Supreme Court concluded that "*Calder* made

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)              Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

clear that mere injury to a forum resident is not a sufficient connection to the forum."
*Id.* at 290.  "The proper question is not where the plaintiff experienced a particular
injury or effect but whether the defendant's conduct connects him to the forum in a
meaningful way."  *Id.*  Thus, "to exercise jurisdiction consistent with due process the
defendant's suit-related conduct must create a *substantial connection* with the forum
State," *id.* at 284 (emphasis added), and the "analysis looks to the defendant's contacts
with the forum State itself, not the defendant's contacts with persons who reside there,"
*id.* at 285.

     **Third**, in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir.
2017), the Ninth Circuit clarified the impact of *Walden*.  In doing so, the court
instructed that "while a theory of individualized targeting may remain relevant to the
minimum contacts inquiry, it will not, on its own, support the exercise of specific
jurisdiction[.]"  *Id.* at 1070.  *Axiom* involved a copyright infringement action brought
by California and Arizona corporations against Chinese and United Kingdom
defendants.  *Id.* at 1066.  The international defendants sent a newsletter promoting one
of their products and used the plaintiffs' logos in the newsletter.  *Id.* at 1067.  "No
more than ten recipients [of the newsletter] were located in California," and most of the
recipients were located in Western Europe.  *Id.*  In concluding that personal jurisdiction
did not exist, the Ninth Circuit reasoned that it could "hardly be said that 'California
[wa]s the focal point of the [newsletter] and of the harm suffered."  *Id.* 1070–71.  "The
foreseeability of injury in a forum 'is not a 'sufficient benchmark' for exercising
personal jurisdiction.'"  *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474).

     *Calder*, *Walden*, and *Axiom* demonstrate that a defendant must expressly aim his
or her conduct at the *jurisdiction*—not just a plaintiff that happens to reside there.
Here, Plaintiff has failed to show that California was "the focal point both of the story
and of the harm suffered."  *Calder*, 465 U.S. at 789.  The FAC states that Walkers, a
law firm located in the Cayman Islands, represented clients, who are all residents of the
Cayman Islands, in a liquidation proceeding that occurred entirely in the Cayman
Islands and involved a company that is described in the FAC as a "Cayman Islands
corporation, whose primary business was to provide live event and media content into
the Chinese marketplace."  (FAC ¶ 37).  Walkers has no office in California or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

anywhere in the United States, and Plaintiff has not alleged that any of the actions taken by Walkers attorneys occurred in California.  (Motion at 15).

California is hardly the focal point.  Plaintiff merely alleges that Walkers reviewed, revised, and sent two emails related to documents that could foreseeably affect at least one California company and one California resident.  But "something more" than a "foreign act with foreseeable effects in the forum state" is needed to establish jurisdiction.  *Pakootas*, 905 F.3d at 577.  Plaintiff has not overcome that burden.

### c.  Grant Defendants

Plaintiff has similarly failed to establish personal jurisdiction over the Grant Defendants.

Plaintiff sufficiently alleges that Dickson committed the following intentional acts: (1) signed the assignment agreements on behalf of RAAD to transfer key CBG assets to RAAD on the eve of the sale to Remark; (2) "reviewed and marked-up the transaction documents effecting the transfers well in advance of the closing of the transaction" and then executed the effectuating documents; and (3) in his official capacity as a joint liquidator, told Plaintiff that the Note was not secured by the Collateral.  (FAC ¶ 58, 64).  Tyrrell committed intentional acts when he allegedly responded to an email from Williams regarding the assignment agreements and sent comments on the assignment documents.  (*Id.* at ¶ 58).  As to Grant, Plaintiff claims it is subject to personal jurisdiction based on the acts of its employees aimed at the forum.  (Grant Opp. at 15).

For reasons similar to those detailed above, Plaintiff has failed to establish that the intentional acts of the Grant Defendants were "expressly aimed" at California.  In his Opposition, Plaintiff emphasizes that the Grant "Defendants knew, or should have known, the effects of the Asset Transfers in the Cayman Islands would have on" California companies, such as RAAD, and California creditors, such as Plaintiff.  (*Id.* at 15–16).  But, again, *Calder*, *Walden*, and *Axiom* instruct that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."  *Walden*,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

571 U.S. at 291.  And "something more" than a "foreign act with foreseeable effects in the forum state" is needed to establish jurisdiction.  *Pakootas*, 905 F.3d at 577

As pled, Plaintiff's analysis improperly focuses on the contacts CBG, RAAD, and Plaintiff himself have with California.  And it is unclear to the Court how California is the focal point of the story or harm allegedly suffered by Plaintiff.  Dickson and Tyrrell are both Cayman Islands residents who allegedly committed the above acts in furtherance of a liquidation, ordered by a Cayman Islands court, of a Cayman Islands company.  Grant—Dickson and Tyrrell's employer— is a Cayman Island entity with "no business or activities in California."  (Motion at 13).  Moreover, Plaintiff has not alleged that any of the Grant Defendants visited California, or the United States, in connection with the underlying Cayman Islands liquidation.  Thus, Plaintiff has merely alleged that the Grant Defendants committed foreign acts with foreseeable effects in California because Plaintiff and at least one of the companies "resided" within the state at the relevant time.

Lastly, Plaintiff does not argue that the Grant Defendants are subject to jurisdiction pursuant to the jurisdictional provision of the RICO statute, 18 U.S.C. § 1965(b).  Plaintiff acknowledges that the Grant Defendants were not served in a "judicial district of the United States," as required by the statute.  18 U.S.C. § 1965(b); *see also Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998), aff'd and adopted, 248 F.3d 915 (9th Cir. 2001) ("RICO does not apply where, as here, the defendant is served outside of the United States.").

Accordingly, the Grant MTD is **GRANTED**.

### 2.  RICO Jurisdiction

Plaintiff also argues that the Court has jurisdiction over the Hickory Grove Defendants and Walkers pursuant to 18 U.S.C. § 1965(b), a jurisdictional provision of the RICO statute, which provides:

In any action under section 1964 of this chapter [RICO's "civil remedies" provision] in any district court of the United States in which it is shown

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

that the ends of justice require that other parties residing in any other
district be brought before the court, the court may cause such parties to be
summoned, and process for that purpose may be served in any judicial
district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).

As discussed below, Plaintiff has failed to state a viable RICO claim.  There can
be no jurisdiction over defendants otherwise not subject to jurisdiction pursuant to §
1965(b) if there is not a plausible underlying RICO claim.  Moreover, "[f]or
nationwide service of process to be imposed under section 1965(b) ... the plaintiff must
show that there is no other district in which a court will have personal jurisdiction over
all of the alleged co-conspirators." *Butcher's Union Local No. 498, United Food &
Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).  Plaintiff, in
his FAC, has not attempted to show there is not some other federal district court that
could exercise jurisdiction over all defendants, and therefore has not met that burden.
*See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989–90 (C.D. Cal. 2013) ("While
it is not clear that there is another district that could exercise jurisdiction over all
defendants, plaintiff has the burden of showing affirmatively that this is the case.").

Accordingly, the Hickory Grove MTD and Walkers MTD are **GRANTED**.

## B.    RICO Violation, 18 U.S.C. § 1962(c) (Claim 1)

### 1.  Timeliness

Defendants argue that Plaintiffs' RICO claims are time-barred by the four-year
statute of limitations applicable to civil RICO claims.

Under the "injury discovery rule," "[t]he limitations period for civil RICO
begins to run when a plaintiff knows or should know of the injury which is the basis
for the action." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353,
365 (9th Cir. 2005).  This "rule creates a disjunctive two-prong test of actual or
constructive notice[.]" *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001).  "The
plaintiff is deemed to have constructive knowledge if it had enough information to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* (quotation marks omitted).  However, a plaintiff need not discover that the injury is part of a "pattern of racketeering" for the period to begin to run.  *Rotella v Wood*, 528 U.S. 549, 554 (2000).

Defendants identify at least four separate occasions—each of which occurred more than four years before the commencement of this action on March 29, 2024—that demonstrate Plaintiff knew or should have known of his alleged injuries.  (*See* Walkers MTD at 27).  First, Plaintiff arguably became aware of his injury on June 14, 2017, when he received notice that the JOLS rejected his Proof of Debt.  (*See* FAC ¶ 69).  Second, in the Roseman Action, Plaintiff's complaint stated that on or about September 1, 2017, during the Cayman Islands proceedings, Plaintiff "first discovered CBG did not actually own" the assets securing his Note.  (Docket No. 79-1 ("Roseman Action Compl.") at ¶ 37).  Third, Plaintiff arguably had notice when the appellate court in the Cayman Islands denied Plaintiff's appeal of the rejection of the Proof of Debt.  (*See* FAC ¶ 73).  Lastly, when Plaintiff commenced the Roseman Action on February 21, 2019, he pled facts in the complaint demonstrating that he knew of the alleged injuries that form the subject of the claims here.  (*See* Roseman Action Compl. ¶ 44–45).

Plaintiff responds that, when the JOLs rejected his Proof of Debt, "he had no reason to suspect the Asset Transfers and no access to discovery or other mechanism" that would warrant an investigation of transfers.  Moreover, when he commenced the Roseman Action in February 2019, he believed Roseman had simply misrepresented CBG's assets at the time of the execution of the Note and Pledge Agreement.  It was not until he deposed Roseman that he "learned how the Asset Transfers impacted his creditor rights[.]" (Sheppard Mullin Opp. at 27).  At minimum, Plaintiff argues, a factual dispute exists as to when he had constructive notice of the alleged injury.

The Court finds Plaintiff's arguments unpersuasive.  Plaintiff bases his Section 1965(c) claim on an allegedly fraudulent scheme aimed at "depriv[ing] [Plaintiff] of his creditor rights and . . . what he was rightfully owed under the Note and Pledge Agreement." (FAC ¶ 124).  But it can hardly be said that Plaintiff had no notice, or at least constructive notice, that he had suffered these deprivations.  In fact, Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)              Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

appealed the denial of the Proof of Debt in the Cayman Islands and filed an earlier lawsuit against Roseman because he recognized he had been deprived of his credit rights and what he was owed under the Note and Pledge Agreement.  He may not have known *how* he was deprived of those rights, but he certainly knew that he had suffered the injury.  And, notably, both the Ninth Circuit and Supreme Court have held that a plaintiff need not discover "all the elements of [a RICO] claim" for the clock to start ticking.  *Grimmett v. Brown*, 75 F.3d 506, 512–13 (9th Cir. 1996); *see also Rotella*, 528 U.S. at 555.

Here, knowledge of "how the Asset Transfer impacted his creditor rights" plainly goes to Plaintiff's awareness that his injury may have been part of a pattern of racketeering, not awareness of the injury itself.  In *Rotella*, the Supreme Court acknowledged that identifying a complex, concealed, or fraudulent pattern of racketeering activity may require "considerable effort" from a Plaintiff.  528 U.S. at 556.  But similar responsibility is placed on plaintiffs alleging medical malpractice claims, and the Court identified "no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff."  *Id.*  In fact, "that difficulty in identifying a pattern is inherent in civil RICO . . . only reinforce[d] [the Supreme Court's] reluctance to parlay the necessary complexity of RICO into worse trouble in applying its limitations rule."  *Id.* at 559.  Holding otherwise "would patently disserve the congressional objective of a civil enforcement scheme . . . aimed at rewarding the swift who undertake litigation in the public good."  *Id.*

Similarly, in *Grimmett,* the plaintiff argued that her claim accrued when she realized there was another victim of the defendant's scheme and thereby discovered the "pattern" of the defendant's alleged conspiracy.  75 F.3d at 510–11.  The Ninth Circuit squarely rejected the argument, finding that the claim accrued when the plaintiff was injured, not when she discovered the other elements of her RICO claim.  *Id.* at 511–12 (the "argument ... that a plaintiff's cause of action should not accrue until she has discovered that all elements exist ... is wrong.").  Here too, the factual injury determines the commencement of the limitations period.

Accordingly, the Court concludes Plaintiff's Section 1965(c) claim is time-barred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

### 2.  Pattern (Close-ended Continuity)

Even if Plaintiff's claim was timely, it fails for at least one additional reason—
the failure to adequately allege a pattern of activity with close-ended continuity.

The elements of a civil RICO claim are as follows: (1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')
(5) causing injury to plaintiff's business or property." *United Brotherhood. of
Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834,
837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353, 361 (9th Cir. 2005)).  '[R]acketeering activity' includes, *inter alia*, 'any
act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat
involving ... extortion, ... which is chargeable under State law.'" *Id.* (quoting 18
U.S.C. § 1961(1)(A), (B)).

"A 'pattern of racketeering activity' requires at least two predicate acts of
racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years."
*Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting 18
U.S.C. § 1961(5)).  Further, "the term pattern itself requires the showing of a
relationship between the predicates, and of the threat of continuing activity. It is this
factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc.
v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citations, brackets, and internal
quotation marks omitted) ("RICO's legislative history reveals Congress' intent that to
prove a pattern of racketeering activity a plaintiff . . .  must show that the racketeering
predicates are related, *and* that they amount to or pose a threat of continued criminal
activity.").

"'Continuity' is both a closed-and open-ended concept, referring either to a
closed period of repeated conduct, or to past conduct that by its nature projects into the
future with a threat of repetition."  *Id.* at 241–42 ("It is, in either case, centrally a
temporal concept[.]").  Because continuity can be either closed-or open-ended, it does
not necessarily "require a showing that the defendants engaged in more than one
'scheme' or 'criminal episode.'"  *Medallion Television Enters., Inc. v. SelecTV of Cal.,
Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987).  "The circumstances of the case, however,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

must suggest that the predicate acts are indicative of a threat [of] continuing activity."
*Id.*

Closed-ended continuity is established by "a series of related predicates extending over a substantial period of time."  *H.J. Inc.*, 492 U.S. at 242.  When determining whether a plaintiff adequately alleges a pattern of activity with closed-ended continuity, courts in this Circuit often consider: "(1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries."  *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559 SW, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) (citing cases); *see also, e.g., Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, No. 15-cv-2288-BAS-WVG, 2018 WL 3222610, at *17 (S.D. Cal. June 19, 2018).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."  *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.  But in any event, "the mere passage of time does not necessarily indicate the existence of a closed-ended pattern."  *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000).

The FAC identifies 20 paragraphs describing Defendants' predicate acts.  (*See* FAC ¶ 128).  Evaluating the nature of each alleged predicate act, the Court concludes Plaintiff's allegations reflect "a single fraudulent effort, implemented by several fraudulent acts," not a pattern of activity.  *Buran Equip. Co. v. Hydro Elec. Constructors, Inc.*, 656 F. Supp. 864, 866 (N.D. Cal. 1987) (internal quotation marks and citation omitted).

For example, in *Sever v. Alaska Pulp Corp.*, the Ninth Circuit evaluated a RICO claim alleging that a plaintiff's former employer and several of its management employees (collectively, "APC") took retaliatory actions against him.  978 F.2d 1529, 1532 (9th Cir. 1992).  The plaintiff alleged that APC engaged in a pattern of racketeering activity that damaged his ability to "obtain employment or earn a living."  *Id.* at 1533.  The Ninth Circuit noted that "although [plaintiff] allege[d] a number of 'acts,' APC's collective conduct [wa]s in a sense a single episode having the singular purpose of impoverishing [plaintiff], rather than a series of separate, related acts."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)              Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

at 1535.  The court further reasoned that predicate acts designed to bring about a single event did not pose a threat of continuity.  *Id.* at 1535–36.  Single-victim cases with a single episode—regardless of the alleged number of actual acts—and a single purpose do not meet the continuity requirement.  *See id.* at 1535.

The *Sever* court relied heavily on *Medallion*, a prior Ninth Circuit decision concluding Plaintiff had failed to establish close-ended continuity.  833 F.2d 1360. There, the plaintiff alleged the defendant fraudulently induced it into entering a television contract.  *Id.* at 1361.  Although the plaintiff had alleged two predicate acts, the court noted that the plaintiff's "allegations concern a single fraudulent inducement to enter a contract. Once the [contract was entered into], the fraud, if indeed it was a fraud, was complete."  *Medallion,* 833 F.2d at 1364.  The court was also influenced by the fact that there was but a single victim involved.  *Id.*

Lastly, in *McGowan v. Weinstein*, a more recent district court decision, the plaintiff was allegedly assaulted by one defendant, who later learned that she planned to expose him in a memoir.  505 F. Supp. 3d 1000, 1007 (C.D. Cal. 2020).  The defendants collectively engaged in multiple predicate acts to prevent the plaintiff from disclosing the assault in her memoir.  *Id.*  In concluding there was no close-ended continuity, the court reasoned that "[t]hough the Complaint set[] out a long and winding story of fraud and deceit, it [wa]s marked with guideposts leaving no question that the allegations relate to a singular plan and purpose regarding [plaintiff] and her book."  *Id.* at 1013.  The alleged scheme had "a single victim and a single goal—to protect Weinstein's reputation . . . That [d]efendants used several different tactics to achieve their single goal does not turn [the] scheme into one with multiple goals and or victims, and does not mandate a finding of [close-ended] continuity . . ."  *Id.* (internal quotation marks and citation omitted).

Here too, Plaintiff's predicate acts demonstrate a scheme with a single goal — depriving Plaintiff of his creditor rights and any money owed under the Note and Pledge Agreement—implemented through multiple steps.  For instance, the predicate acts identified in the FAC include the Sheppard Mullin Defendants asking the noteholders to enter into Distribution Agreements, Hickory Grove selling its shares in RAAD to CBG, the Grant Defendants and Walkers reviewing and marking up the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                    Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

transaction documents prior to the Asset Transfer, and the JOLs seeking to enforce the
Cayman Island judgment against Plaintiff for litigating his Proof of Debt claim.  (FAC
¶¶ 53, 58, 116, 76).  While true that Defendants "used several different tactics to
achieve their single goal," *Sever*, *Medallion*, and *McGowan* counsel that that is simply
not enough.  505 F. Supp. 3d at 1013.

Moreover, the finding that Plaintiff has failed to allege a pattern of activity with
close-ended continuity is also supported by the fact that the scheme had one victim and
one injury.  While Plaintiff attempts to argue in his various oppositions that CBG's
other creditors are also victims of the scheme, the FAC expressly and repeatedly
alleges that the purpose of the scheme was to "deprive [Plaintiff] of his creditor rights,"
not other CBG creditors generally.  (FAC ¶ 127); (*see also id.* ¶ 122 ("The enterprise
was organized with the mutually understood goal and purpose of defrauding
Bobulinski.")).  It is also unclear how those other creditors, who, according to Plaintiff,
all voluntarily signed Distribution Agreements waiving their rights as secured
creditors, were harmed by the scheme.  It, instead, appears that they "got everything
they had bargained for."  *Medallion*, 833 F.2d at 1364, n. 3 (rejecting "unsupported
assertions" that plaintiff was "not the only victim," as defendant's alleged
misrepresentations towards third parties were merely "parts of its single effort to
[defraud plaintiff]").

Plaintiff's binding authority is inapposite.  Specifically, Plaintiff cites *Sun
Savings and Loan Association v. Dierdorf*, 825 F.2d 187 (9th Cir. 1987) and *Allwaste,
Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) as precedential Ninth Circuit opinions
establishing that a single-victim scheme can establish close-ended continuity. (*See*
Sheppard Mullin Opp. at 9).  However, *Sun Savings* found the continuity requirement
satisfied based on a threat of continuing activity—something Plaintiff has failed to
demonstrate here.  *See Sun Savings*, 825 F.2d at 194.  And the Court does not find
*Allwaste* analogous to this case, either.  *Allwaste* was not a single victim case, as the
alleged kickbacks scheme targeted multiple businesses.  65 F.3d at 1529.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)                Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

### C.    RICO Claim, 18 U.S.C. § 1962(d) (Claim 2)

RICO's conspiracy provision provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of [18 U.S.C. § 1962]." 18 U.S.C. § 1962(d).  Here, for the reasons stated above, Plaintiff failed to adequately allege a violation of Section 1962(c), and therefore his conspiracy claim also fails.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

### D.    State Law Claims (Claims 3–8)

In the absence of any federal question jurisdiction or diversity jurisdiction, it appears that the Court no longer has a basis for subject matter jurisdiction. The Court intends to decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

As the Ninth Circuit has explained, "[i]n the usual case in which federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims."  *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994); *see also Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed.").

At the motion to dismiss stage, the Court and the parties have expended only a modest amount of resources in this case.  Plaintiff's remaining claims stem from alleged violations of state law and should properly be adjudicated in the state system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-02600-MWF (JPRx)               Date:  February 20, 2025
Title:  Tony Bobulinski v. Hugh Dickson et al

## VI.   LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

When granting a motion to dismiss for lack of personal jurisdiction, courts differ in their approach to awarding leave to amend.  *See e.g.*, *Hogan v. Weymouth*, CV 19-2306-MWF (AFMx), 2019 WL 11611094, at *6 (C.D. Cal. Sept. 27, 2019) ("Case law is not definitive whether motions under Rule 12(b)(2) should be granted with leave to amend."); *Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir. 2002) (affirming district court's dismissal for lack of personal jurisdiction without leave to amend); *Regal Art & Gifts, Inc. v. Fusion Prod., Ltd.*, CV 15-04363-KAW, 2016 WL 454116, at *8 (N.D. Cal. Feb. 5, 2016) (because district court believed facts sufficient for personal jurisdiction existed, Rule 12(b)(2) motion granted with leave to amend).

Here, the Court concludes dismissal without leave to amend is not appropriate. The parties base their jurisdictional arguments primarily on allegations about Defendants' conduct.  And, of course, there is a possibility that Plaintiff could cure the deficiencies identified in his RICO claims and avail himself of the jurisdictional provision in the statute.

Although the RICO claims were dismissed pursuant to the relevant statute of limitations, the Court notes that both the Supreme Court and the Ninth Circuit have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 24-02600-MWF (JPRx)**                     **Date:  February 20, 2025**
Title:  Tony Bobulinski v. Hugh Dickson et al

recognized that federal statutes, including RICO, "are generally subject to equitable principles of tolling."  *Rotella*, 528 U.S. at 560; *Grimmett*, 75 F.3d at 514 ("Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases."). These facts, however, must be pled with particularity.  *Grimmett*, 75 F.3d at 514.

That being said, the Court remains skeptical that the deficiencies identified in this Order can remedied by amendment.  Nonetheless, the Court is willing to grant Plaintiff one opportunity to do so.  Any future successful motion to dismiss will be granted without leave to amend.

## VII.  **CONCLUSION**

All five Motions are **GRANTED** *with leave to amend*.  Plaintiff may file a Second Amended Complaint ("SAC") by no later than **March 24, 2025**.  Defendants shall file an Answer or respond to the SAC, if filed, by no later than **April 25, 2025**. Any future successful motion to dismiss will be granted without leave to amend.  Failure to file a SAC by that date will result in dismissal of this action.

IT IS SO ORDERED.